FreemaN, J.,
delivered the opinion of the Court.
This bill is filed to have, in the language of the prayer of the bill, a contract for the sale of land “set up, and a title bond reformed or corrected, according to the contract and understanding of the parties,” and to have compensation for 100 acres of land and 10 acres, alleged to have been sold by defendants to complainant, to which they have no title, and which, it appears, was not included in the deed made for the land, though supposed by both parties at the time, to be so included.
*666 It is insisted, in this case, that the relief sought can not be given, because compensation is only granted in courts o.f chancery, as incident to other relief; as specific performance, when asked on the part of a vendee, with compensation for deficiency in quantity. This question is not fairly made before us in this case, as the defendants failed to take advantage of want of jurisdiction of a court of equity, by a proper demurrer. Having answered, it is a waiver of the objection to the jurisdiction of the Court over the subject matter, as well as over the person, notwithstanding the matter might have been of legal cognizance. 4 Cold., 372; 3 Head, 372.
There is a claim made in the bill for the expenses incurred in defending a suit brought to recover the land from the vendee, and for costs and attorney’s fees, which is not decided by the Chancellor, but is reserved. ¥e can not, therefore, notice it. ■
The facts of this case show clearly that complainant purchased, as he supposed, the one hundred acres and the ten acres in controversy. It is equally certain that defendants thought they were selling this land. This not only appears from the statements of the answer, but also from the fact that they placed complainant in possession of the land as part of the purchase. The proof sustains this view, independent of the admissions of the answer.
The simple question, in this aspect of the case then is, can a party, in any court, either of law or equity, recover the purchase money, where it was paid for property, which, by mutual mistake of vendors and vendees, he fails to get any title to; in other words, where the consideration for the payment entirely fails? We hold *667 that he can certainly do so, in ■ a court of law; and we think, in a case like this, where an account is sought for improvements, or, perhaps, without it, under the general jurisdiction of a court of equity to give relief against mistakes to the injury of a party, innocently made, that this Court might well take cognizance of the question, and give the party relief, under the idea of compensation for loss occasioned by such mistake. However this may be, it is certain, as .we have said, that the right to recover back money paid under a mistake of facts, and to a party who has no claim in conscience to retain it, can not be questioned. Dickens v. Jones, 6 Yer., 483; Bank of Commerce v. Union Bank, 3 N. Y., 237; 1 Hill, 287.
As to what amount is to be recovered by complainant, we hold’ that the price paid for the land to which the title fails, or which was not included in his deeds, with interest, is the sum to which he is entitled; that is, as he purchased, by the terms of the contract, the one hundred acres, and the ten acres, and paid an agreed price for this land, in connection with other land, and fails to get what he bought and paid for, he is entitled to that money, and interest on the sum so paid by him.
The Chancellor did not allow anything to the purchaser for a portion of the land; probably on the ground that the complainant had not been ousted of the possession of that portion, but had maintained his possessory right under the statute of limitations. "Whatever right he got in this way was not derived from the defendants, and can not abate the right of recovery in this case. Besides the possessory right asserted and maintained in *668 the suit at law, not being under color of title, will end, or, rather, has ended, by his death. So that the decree of the Chancellor will be modified to this extent, on this question.
The question is presented, as a matter specially appealed from in the Chancellor’s decree, of the liability of Stokes, the joint executor, who conveyed what land was conveyed in connection with Tubb, the other executor. The Chancellor dismisses the bill as to him, and Tubb objects to this, insisting that as it was a joint sale and conveyance, the liability must be joint. It may be remarked, that the liability does not arise on the deed or on the title bond, but out of the fact that the land was sold by the understanding of the parties and paid for, but, by mistake, not included in the conveyance, and can not be, for want of title. There is a failure on the part of the vendors to make delivery, so to speak, of what they have received the money for; and therefore they, in equity and good conscience, can not keep the money. In this view of the case, we can not see how Stokes is not bound to refund whatever money he may have thus received. An inquiry will be directed to be made by the Clerk and Master, to ascertain whether any portion of this money went into the hands of Stokes; and if so, to that extent he will be decreed to be liable for the same, in connection with his co-defendant, Tubb.
It is insisted for Stokes, that he has settled his trust as executor, and been denuded of his office of executor. This can not change his liability, as it is one personal, not official. The sale of the land actually conveyed by virtue of his power as executor was an official act. But *669 be bad no authority to sell the one hundred and ten acres, to which his testator had no title or claim. He was acting beyond his authority; and the principle that he who acts under a power or authority as an agent, and exceeds that power, to that extent makes himself personally liable on his contract, would fix his liability personally in this case. He would have recourse on the estate of his testator probably, for the money, if it went into said estate, having. been paid to that estate by mistake. At any rate, in this direction lies his relief, if any liability should appear from the report of the Clerk and Master on that question.
While we hold that the measure of complainants’ recovery is the amount actually paid for the land which was not included in his deed, yet the sale being in gross for the sum of $1,050, -there is a serious difficulty presented as to how the amount shall be ascertained. We can see no better way, under the peculiar circumstances of the case, than to ascertain the actual value of the 110 acres of the land, at the time sold, in proportion to the whole amount of land intended to be sold at the price specified, and thus arrive at what was the sum paid.
As to the question made on the refusal of the Chancellor to grant a rehearing of the case, on motion of defendant, based on affidavit, we can only say that such a practice is unheard of in chancery proceedings, so far as our knowledge extends, in Tennessee or in England, and the Chancellor was certainly correct in overruling said motion.
The only means of obtaining a rehearing such as was *670 sought, was by a petition to the Chancellor, regularly filed and sworn to, stating the grounds for the re-hearing. See 33rd Rule of Chancery Pr., Code, p. 984. If this practice had been pursued, we could, on this appeal, have reviewed the action of the Chancellor on this subject; but we can not say that he erred in refusing to rehear a case in a Court of Chancery on motion.
The decree of the Chancellor will be reversed and modified, and one in accordance with this opinion be entered here, the appellants paying the costs of this Court.
On the 4th day of March, 1871, a petition for rehearing having been filed, the following opinion was delivered by FkkemaN, J.:
We have carefully examined the elaborate, ingenious and able argument presented on the part of defendants, especially of defendant Stokes, for rehearing, and modification of the opinion in this case.
We do not feel called on to reply to that argument at length, but only to- give our conclusions. The case received the most careful consideration, the result of which was the opinion already delivered. We see nothing in the argument submitted to us to change the result, as declared in that opinion.
The simple point in the case is, that Stokes, in his answer, admits that he received a portion of the purchase money paid for the land. It is proven beyond all question, that this money, or a portion of it, was paid for the one hundred acres and for the ten acres, and that Stokes and Tubbs did not convey this land and could not do so; *671 and by virtue of this conveyance, complainant did not get a title to a foot of the land thus paid for. The plain law of the case is, that the parties who received this money, for land which they did not and could not convey, should refund it to the party from whom they received it.
It was a mistake of the parties, in supposing they had conveyed the one hundred acres and the ten acres, and the relief is not predicated at all of any fraudulent misrepresentations alleged to have been made. In this view of the ease, it makes no difference whether Stokes contracted for personal liability or not. He is not held liable on covenants, but simply because he has received the money; and the land which was to have been given for it, has not been, nor cannot be conveyed to the party who gave his money for it. Justice and right demands they should not keep the money under these circumstances.
The fact that Stokes has settled in a Court of Chancery with the heirs and devisees of Kelly, can have no influence on the rights of complainant, who was not a party to that proceeding, and can not be affected by it; and without discussing the other questions presented, we affirm our former opinion in this case.